**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 11-0317-08 |
| VERSUS | JUDGE DONALD E. WALTER |
| RANDY RANDALL | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM ORDER**

Before the Court is a motion for compassionate release filed pro se by the defendant, Randy Randall ("Randall"). See Record Document 618. The Federal Public Defender's Office notified the Court that its office would not be enrolling on behalf of Randall. The Government opposes Randall's motion. See Record Document 622. Randall filed a reply to the Government's opposition. See Record Document 625. Based on the following, the motion for release is **DENIED**.

Randall and twelve co-defendants were charged in a thirty-four count indictment, charging various narcotics and firearm offenses. Randall was charged in four counts--conspiracy to distribute cocaine, possession with intent to distribute cocaine, possession of a firearm in furtherance of a drug trafficking crime and felon in possession of a weapon. See Record Document 1. Randall pled guilty to one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine (Count 1), and one count of possession of a firearm in furtherance of a drug trafficking crime (Count 24). See Record Documents 225, 227 and 273.

According to his presentence report, Randall was subject to a statutory, mandatory minimum term of imprisonment of 120 months because the overall amount of drugs involved in the conspiracy was five kilograms or more. The conviction on Count 24 carried a statutory, mandatory minimum term of imprisonment of 60 months, to run consecutively to any term of

imprisonment imposed on Count 1.  As a result, Randall was subject to a combined mandatory minimum sentence of 180 months.  On November 8, 2012, this Court sentenced Randall to 120 months on Count 1 and 60 months on Count 24, to be served consecutively.  See Record Document 286.  Randall is currently housed at the Federal Correctional Institution, Beaumont ("FCI Beaumont Low") and he has a projected release date of November 2024.

On August 12, 2020, Randall filed an "Emergency Application For Modification Of Sentence Pursuant To 18 U.S.C. § 3852(c)(1)(A)(i) As A Result Of Covid-19," seeking compassionate release or, in the alternative, release to home confinement based on his assertion that his race, age, and hypertension combined with a previous heart injury made him particularly susceptible to becoming seriously ill if he contracted COVID-19.  Record Document 618.  Randall asserted in this motion that he had not exhausted his administrative remedies through the Bureau of Prisons ("BOP").  However, Randall attached an exhibit to his motion which indicated to the contrary.  See id., Exhibits at 12-13.  The Warden denied Randall's request for relief based upon his low risk pattern score and his primary offense of violence.  See id.  The Government concedes that Randall has exhausted his administrative remedies but maintains that his motion fails on the merits.  See Record Document 622 at 4.  The Government also concedes that Randall can demonstrate an "extraordinary and compelling reason" as defined in 18 U.S.C. § 3582(c)(1)(A) due to his body mass index over 30,[1] as this is a condition recognized by the Centers for Disease

---

[1] Although Randall did not allege any COVID-19 confirmed risk factors recognized by the Centers for Disease Control ("CDC") to cause an **increased** risk of severe illness, the Government reviewed the medical records attached to Randall's motion, and noted that Randall has a Body Mass Index ("BMI") greater than 30, which is a confirmed risk factor ("Adults of any age with the following conditions **are at an increased risk** of severe illness from the virus that causes COVID-19: . . . Severe Obesity (BMI > 40kg/m" https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html).

Control ("CDC") as a confirmed COVID-19 risk factor.[2]  See id.  Nevertheless, the Government argues that Randall is still a danger to the community and that the factors set forth under 18 U.S.C. § 3553(a) counsel against his release.  See id.

A judgment, including a sentence of imprisonment, "may not be modified by a district court except in limited circumstances." Dillon v. United States, 560 U.S. 817, 824, 130 S. Ct. 2683, 2690 (2010).  Under 18 U.S.C. § 3582(c), a court generally "may not modify a term of imprisonment once it has been imposed," except:  (1) upon a motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A); (2) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," 18 U.S.C. § 3582(c)(1)(B); and (3) where the defendant was sentenced based on a retroactively lowered sentencing range, 18 U.S.C. § 3582(c)(2).  Section 3852(c)(1)(A)(i) provides that a court may reduce a prisoner's sentence after administrative remedies have been exhausted "if it finds that" (1) "extraordinary and compelling reasons warrant such a reduction" and (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission."

The Sentencing Commission's policy statement regarding compassionate release is consistent with the statute and provides, in pertinent part, as follows:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
>   (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
>
>   (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

---

[2] The CDC lists hypertension under the category of "adults of any age with the following conditions **might be at an increased risk** for severe illness from the virus that causes COVID-19."  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

  (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.  In the commentary following the policy statement, the Sentencing Commission identifies three specific reasons that are considered "extraordinary and compelling," as well as a broader provision for reasons deemed "extraordinary and compelling."

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> > (A) Medical Condition of the Defendant.—
> >
> > > (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> > >
> > > (ii) The defendant is—
> > >
> > > > (I) suffering from a serious physical or medical condition,
> > > >
> > > > (II) suffering from a serious functional or cognitive impairment, or
> > > >
> > > > (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
> >
> > (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
> >
> > (C) Family Circumstances.—
> >
> > > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> > >
> > > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

>   (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G § 1B1.13 cmt. n. 1.

The defendant bears the burden to establish circumstances exist under which he is eligible for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See United States v. Ennis, No. 02-1430, 2020 WL 2513109, at *4 (W.D. Tex. May 14, 2020) ("[T]he defendant has the burden to show circumstances meeting the test for compassionate release." (citing United States v. Stowe, No. 11-803, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019)); United States v. Wright, No. 16-214, 2020 WL 1976828, at *6 (W.D. La. Apr. 24, 2020) (Petitioner has the "burden of showing the necessary circumstances, or a combination of circumstances, that would warrant relief under the compassionate release statute."). As previously mentioned, the Government concedes that Randall can demonstrate that extraordinary and compelling reasons exist under 18 U.S.C. § 3582(c)(1)(A) to modify his prison sentence based upon a review of his medical records. Specifically, the Government states: "The United States agrees that these chronic conditions [obesity in conjunction with hypertension] present 'a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" as provided in Section 1B1.13, comment note 1(A)(ii). Record Document 622 at 8.

Regardless of this concession by the Government, the existence of an "extraordinary and compelling reason" does not end the inquiry. The Court must consider whether Randall remains a danger to the community before granting compassionate release, as required by United States Sentencing Guideline § 1B1.13(2), which refers to 18 U.S.C. § 3142(g). Furthermore, 18 U.S.C.

§ 3582 and the policy statement require the Court to consider the sentencing factors set forth in 18 U.S.C. § 3553(a).

Section 3142(g) sets forth the factors that courts must consider in deciding whether to release a defendant pending trial. These factors to be considered include the "nature and circumstances of the offense charged," "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Similarly, Section 3553(a), which sets forth the factors to consider in imposing sentence, requires the Court to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the need for the sentencing imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; and (C) to protect the public from further crimes of the defendant. See 18 U.S.C. § 3553(a).

The Court finds that Randall has not demonstrated that he will not be a threat to others or the community if released. First, Randall was sentenced for conspiracy to distribute fifty grams or more of cocaine base. Second, Randall has an extensive criminal history, which includes three driving under the influence convictions, two convictions for battery against women, two controlled substance convictions, and a felon in possession of a firearm conviction. In addition to Randall's fifteen convictions that occurred prior to the conviction in the instant matter, he also had seven other arrests, spanning from 1990 to 2011. Admittedly, these arrests and convictions all occurred prior to 2011, but the timing seems to indicate that probation and short periods of confinement failed to deter Randall from additional criminal conduct. Randall has a lengthy criminal history which included many convictions which received no criminal history points due to the age of the

convictions, but many of his arrests, convictions and other criminal conduct included the use of force or violence, in addition to several prior drug related arrests and convictions. See United States v. Mazur, No. 18-68, 2020 WL 2113613, at *4 (E.D. La. May 4, 2020) (noting that even if defendant's circumstances "presented extraordinary and compelling reasons to grant compassionate release," his history of attempted manslaughter, possession of controlled substances, and a misdemeanor for domestic abuse battery demonstrates that he is a danger to the community). Third, even while serving his current sentence, Randall continues to violate BOP policy, as he apparently assaulted another inmate while in custody in 2017. See Record Document 622, Ex. 2. Regardless, and in light of the above, the Court concludes that Randall remains a danger to others and his community. Additionally, in examining the Section 3553(a) factors, to reduce Randall's sentence would not reflect the seriousness of the offense, promote respect for the law or afford an adequate deterrence to criminal conduct. Furthermore, a deviation below the mandatory minimum sentences that were set by Congress would create a sentencing disparity between Randall and other similarly situated defendants, thus invalidating a "just punishment" under 18 U.S.C. § 3553(a)(2)(A).

The Court has also looked at the presence of COVID-19 at the FCI Beaumont Low. There are fourteen inmates and one staff member who are currently testing positive out of 1,775 total inmates.[3] http://www.bop.gov/coronavirus (last updated 11/09/2020). Courts have held that "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). See, e.g., United States v. Clark, No. 17-85, 2020 WL 1557397, at

---

[3] No inmates or staff have died from the virus. However, there are 492 inmates and 3 staff who have recovered from the virus. www.bop.gov/coronavirus (last updated 11/09/20).

\*6 (M.D. La. Apr. 1, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence. . . .") (quoting United States v. Eberhart, No. 13-313, 2020 WL 1450745 (N.D. Cal. Mar. 25, 2020)); Mazur, No. 18-68, 2020 WL 2113613, at \*1, 3-4 (holding that extraordinary and compelling reasons to grant compassionate release were not present for a prisoner diagnosed with myeloid leukemia and hypertension despite twenty-five percent of the inmate population testing positive for COVID-19). Randall has not shown that inmates are currently not receiving adequate medical attention if they contract the virus. Additionally, Randall has not shown that the BOP is unable to adequately manage the COVID situation. This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement.[4] Therefore, the Court finds that Randall has not met his burden.

The Court shares Randall's concerns about the effect of COVID-19 in the prison setting. However, those concerns are not being ignored by the BOP or this Court. The BOP is taking action to address COVID-19 concerns in its facilities. Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, "expand[s] the cohort of inmates who can be considered for home release." The BOP is currently reviewing prisoners to determine if temporary release to home confinement or some other type of release, removal, or furlough is appropriate, under the standards issued by the CDC for persons at heightened risk. The

---

[4] In the alternative, Randall requested release to home confinement but ultimately admitted in his reply that this Court cannot grant such relief. In an abundance of caution, however, this request is also **DENIED**, as the decision on whether to release an inmate to home confinement is within the exclusive purview of the Bureau of Prisons. See 18 U.S.C. § 3621(b); United States v. Read-Forbes, No. 12-20099-01, 2020 WL 1888856, at \*5 (D. Kan. Apr. 16, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision."); United States v. Rodriguez, No. 15-198, 2020 WL 5369400, at \*3 (E.D. La. Sept. 8, 2020).

BOP currently has 8,030 inmates on home confinement and the total number of inmates placed in home confinement from March 26, 2020 to the present (including inmates who have completed service of their sentence) is 16,693. https://www.bop.gov/coronavirus/(last updated 11/09/2020).

For the foregoing reasons, **IT IS ORDERED** that Randall's motion is **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 9th day of November, 2020.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE